UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| K.C., a minor,<br><br>                  Plaintiff,<br>v.<br><br>MELANIE VEJMOLA, et al.,<br><br>                  Defendant. | Case No.: 17cv683-LAB (NLS)<br><br>**ORDER SUMMARILY DENYING MOTION FOR LEAVE TO AMEND** |

After the Court issued an order (Docket no. 36) dismissing the first amended complaint ("FAC"), Plaintiff filed her motion for leave to amend (Docket no. 37), attaching her proposed second amended complaint ("SAC") as an exhibit. For reasons discussed in this order, the SAC does not correct the defects the Court's earlier order identified, and it is apparent the SAC would not survive a motion to dismiss. In the interests of saving time and resources, *see* Fed. R. Civ. P. 1, the motion is being summarily denied, and Plaintiff will be given another opportunity to seek leave to amend. The pleading standard and other applicable law are discussed in the Court's earlier order and are not repeated here except as needed.

**Plaintiff's Claims**

The FAC brought a claim against Melanie Vejmola for negligence and battery, and against all other Defendants for negligence. It sought to hold the

United States liable under the Federal Tort Claims Act (FTCA). It also sought to hold various property management companies liable under a negligence theory. The FAC alleged that Vejmola, who was operating an unlicensed daycare center in her home, she shook the child K.C., causing injury. It claimed that the organizations could and should have taken action to prevent this.

Both the FAC and SAC allege jurisdiction only loosely. The FAC described Vejmola as acting in her individual capacity,[1] so claims against her must arise under California state law. Claims against the property management companies also apparently arise under state law, though this is never very clearly stated. The Court can exercise only supplemental jurisdiction over these, because they do not present a federal question and diversity jurisdiction. The Court's jurisdiction over this case depends on the existence of a federal question, namely the FTCA claim against the United States.

In several ways, the SAC is even less specific than the FAC. The SAC proposes to drop the battery claim and omit allegations that Vejmola shook K.C., and to hold all Defendants liable only under a negligence theory for a non-specific "childcare incident" (SAC, ¶¶ 20, 47), that resulted in K.C.'s "sustaining injury to her body and shock and injury to her nervous system" and likely permanent disability. (*Id.*, ¶ 56.) Apparently something has prompted Plaintiff to withdraw the earlier allegation. But whatever that may be, the nature of the incident is never explained. This is a serious flaw, particularly when it comes to the property

---

[1] In a purely conclusory fashion, the SAC alleges that Vejmola and the property management companies were operating as employees and agents of the United States. (SAC, ¶¶ 15–16.) But the factual allegations make plain that in offering childcare in her own home, Vejmola was acting in her own capacity. (*See* SAC, ¶ 20 (alleging that the childcare program was unauthorized); ¶ 26 (alleging that Vejmola was a resident in military housing); ¶ 34 (alleging that Vejmola operated the childcare program as a business in her own home).)

companies' and the United States' liability. Without some factual allegations to show how the injury occurred or even what the injury was, it is impossible to say whether it was foreseeable, whether it was caused by the property companies' and the United States' breach of some duty, or whether it would have been preventable by any precaution these Defendants might have taken. Even assuming, *arguendo*, that these Defendants were obligated to ensure that Vejmola was trained and licensed, no factual allegations suggest this would have prevented whatever happened to K.C.

Another of the SAC's defects is that it fails to plead any facts showing that the property companies or the United States had a duty to protect K.C. from whatever the incident was. The United States can be liable under the FTCA under circumstances where local law would make a private person liable in tort. *See United States v. Olson*, 546 U.S. 43, 44–45 (2005). The Court looks to state law governing the liability of private persons, not public entities, when assessing liability under the FTCA. *Id.* at 46 (citing *Indian Towing Co. v. United States*, 350 U.S. 61, 64 (1955)). The function performed by the United States must be analogous to that performed by private persons. *Olson* at 46–47. The Court's earlier order analogized the United States' role here to that of a landlord or property manager (Docket no. 36 at 5:12–14), and Plaintiff does not challenge that.

In California, the general rule is that the negligence of a tenant is not imputed to the landlord. *See Chee v. Amanda Goldt Property Mgt.*, 143 Cal. App. 4th 1360, 1375 (Cal. App. 1 Dist. 2006). There are some exceptions, such as where the landlord knows that a tenant is creating or maintaining a dangerous condition (*e.g.*, threatening other tenants or keeping a vicious dog) that the landlord has knowledge of and the power to cure it. *See Salinas v. Martin*, 166 Cal. App. 4th 404, 412 (Cal. App. 1 Dist. 2008) (citing *Stone v. Center Trust Retail Properties, Inc.*, 163 Cal. App. 4th 608, 612 (Cal. App. 2 Dist. 2008)). But in general, because the landlord has handed over possession of the premises to the tenant, the

3

17cv683-LAB (NLS)

landlord's duty is attenuated, and a duty will be imposed only after the weighing of a number of considerations. *Id.* These include, among other things, the foreseeability of harm, and the degree to which the landlord would be burdened. *See Castaneda v. Olsher*, 41 Cal.4th 1205, 1213–14 (2007).

The existence of a landlord's duty to protect against harm by a third party (including a fellow tenant) is a legal question for the Court. *Id.* at 1214. The analysis requires that the plaintiff identify specific measures the landlord could have taken that would have prevented the harm. *Id.* at 1214. The Court must determine how financially and socially burdensome it would be to require the landlord to take those measures. *Id.* The Court must also identify the nature of the conduct that caused the harm, and determine how foreseeable it was. *Id.*

The only facts the SAC alleges that could potentially be used to support Plaintiff's side in this analysis are reports by one of Vejmola's neighbors to the property companies, and an agreement that the tenants had to sign. Neither the SAC nor Plaintiff's Motion for Leave to Amend acknowledge or address any of the other factors, such as the cost and burden on the property companies and the United States. *See Castaneda*, 41 Cal.4th at 1216–18 (analyzing social cost and burden on landlord of refusing to rent to suspected gang members and declining to impose a duty).

The SAC alleges that Vejmola's neighbor twice reported to the property companies that Vejmola was operating an unlicensed childcare program. (SAC, ¶¶ 36, 39.) It also alleges that the neighbor observed seven or eight children in Vejmola's home, found the home "in disarray with chaotic and neglected children," noted that Vejmola was "very aggressive with the children," saw choking hazards on the ground, and witnessed Vejmola's husband yelling at one of the children. (*Id.*, ¶ 40.) It alleges that the neighbor reported this to both the property companies and the military police. (*Id.*, ¶¶ 41–42.) It also alleges that the property companies and military police were "notified on several occasions" about these things, and

4

warned that they were a danger. (*Id.*, ¶¶ 43–44.) It does not allege how often Vejmola provided childcare, how long the children were in her care, or whether any of the children were Vejmola's own. It also does not mention how much time passed between the reports and the incident.

The SAC fails to allege any facts that would connect K.C.'s injury to any of the conditions that were reported to the property companies or to the military police. For example, the SAC does not allege that Vejmola's aggressiveness, the chaotic condition of the home, the choking hazards, or anything else mentioned in the reports led to K.C.'s injury. While the SAC's allegations point to the possibility that one or more of these facts were the cause, the pleading standard is not satisfied by showing a mere possibility. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Given that the SAC does not allege anything specific about K.C.'s injury or what caused it, it is impossible to link the injury to anything the United States or the property companies did, or to identify what they could have done to prevent it. This also leaves open the distinct possibility that K.C. would have been injured regardless of any precautions those Defendants might have taken.

The SAC also alleges that the United States and property companies required Vejmola and her husband to sign an agreement regarding certified child care (the "CCC Agreement"). (SAC, ¶ 27.) This required certification through a program affiliated in some way with the Marine Corps.[2] (*Id.*) It also required submission of a form and application to the Family Child Care office. (*Id.*, ¶ 30.) Licensing under the federal program involved attendance at orientation, familiarity with the federal program's licensing laws and regulations, a home inspection, and a background check. (*Id.*, ¶ 31.)

///

---

[2] The SAC appears to describe the program as run by both the federal government and the state. (*See* SAC, ¶¶ 27, 29, 32.)

5

The SAC concludes that under the CCC, Defendants were obligated to investigate the provision of unauthorized childcare for the benefit and protection of children. (SAC, ¶¶ 29, 32, 46, 51.) But the SAC does not attach the CCC, nor allege what it says. Instead, it relies on its own conclusions about the meaning and effect of this agreement, implying that it imposed a duty on Defendants and existed for the benefit of third parties such as K.C.

The interpretation and legal effect of an agreement such as the CCC is a question of law. *See Wyler Summit Partnership v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 664 (9th Cir. 1998). The asserted meaning and effect of the CCC is purely a conclusory allegation, and as such need not be accepted as true at this stage. *See Bhattacharya v. Ariz. State Univ.*, 627 Fed. Appx. 636, 637 (9th Cir. 2015) (affirming dismissal of claim where plaintiff failed to allege facts showing he was third party beneficiary of contract).

Even accepting that the CCC gave the United States and the property companies the right to restrict in-home childcare programs, it does not follow that these Defendants had the obligation to do so. California courts have been reluctant to infer a duty merely from the fact that a landlord or landowner or some analogous person had the power to intervene. *See Chee v. Amanda Goldt Property Mgt.*, 143 Cal. App. 4th 1360, 1375–76 (Cal. App. 1 Dist. 2006) (citing *Cody F. v. Falletti*, 92 Cal. App. 4th 1232 (Cal. App. 1 Dist. 2001)) (holding that although condominium covenants, conditions, and restrictions gave lessor the right to exclude dangerous dogs, they did not create an obligation to do so). They have also been reluctant to import contract-based duties into this area of tort law. *See id.* at 1376 (expressing doubt that, even if restrictions amounted to a contractual promise, they could be the basis for expanded vicarious tort liability).

The SAC also repeats several pleading deficiencies the Court pointed out. They include wholly conclusory allegations that all the Defendants were each other's agents and employees and all participated in each other's actions. (SAC,

¶¶ 15–16.) The SAC is also partially based on a theory that Defendants should have exercised their governmental powers of regulation, inspection, law enforcement, and authority to take other official action. (*Id.*, ¶¶ 51–55). *See Indian Towing*, 350 U.S. at 64 (explaining that the "private person" requirement means the United States cannot be liable for "uniquely governmental functions"); *Olson*, 546 U.S. at 46 (applying the state law governing the liability of private persons, not public entities, to FTCA claim). Furthermore, absent some kind of special relationship not alleged here, the right to governmental protection from dangerous people or conditions is not an actionable right. *See generally, Town of Castle Rock, Colo. V. Gonzales*, 545 U.S. 748 (2005); *DeShaney v. Winnebago County Dept. of Social Servs.*, 489 U.S. 189 (1989).

Finally, the SAC also seems to rest largely on an assumption the Court rejected in its earlier order, namely that disobedience to licensing or other regulatory laws was itself a danger. The Motion for Leave to Amend mentions this, suggesting that unlicensed childcare by an untrained caregiver implied the foreseeability of harm. (Mot. (Docket no. 37-1) at 3:18–4:7.)

The Motion argues that common sense teaches that "watching numerous young children (even your own children)" can be so tiring that injury is likely. (*Id.* at 3:27–4:1.) Given that the SAC alleges only that Vejmola was caring for seven or eight children, this is too much of a stretch. Many people care for seven, eight, or more of their own children full-time, and most have no special training at all. This does not mean they are unfit parents or that their children are in danger. Furthermore, under California law, many small family-based or cooperative childcare programs, which can care for up to twelve children, are exempt from licensing. *See* Cal. Health & Safety Code, § 1596.792(d) and (e); 22 Cal. Code Regs. § 102358. In the judgment of the State of California, then, unlicensed
///
///

7
17cv683-LAB (NLS)

in-home care for seven or eight children, provided by an untrained caregiver, is not necessarily dangerous.[3]

**Conclusion and Order**

The motion for leave to amend is **SUMMARILY DENIED**. Within **14 calendar days from the date this order is issued**, Plaintiff may file a renewed *ex parte* motion for leave to amend (without obtaining a hearing date), that complies with Civil Local Rule 15.1(b). If she fails to file the motion within this time, this action will be dismissed without prejudice for lack of jurisdiction. Within **14 calendar days of Plaintiff's filing a renewed motion**, Defendants may file a single joint opposition. No reply is to be filed without leave.

The proposed second amended complaint must remedy all the defects this order and the Court's previous order have identified. The SAC makes clear that K.C. has been receiving medical care, so Plaintiff is likely able to make some kind of allegation about the nature of K.C.'s injuries and their apparent cause. Plaintiff should also attach the CCC, or at least quote the terms it says amount to Defendants' promise to protect residents from dangerous childcare programs.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

---

[3] This is not to say that Vejmola was in compliance with all the requirements. Family day care is limited to arrangements in which the operator provides care for her own children and for the children of no more than one other family. But Cooperative daycare requires sharing of duties among parents, and limitations on pay.

8
17cv683-LAB (NLS)

If the proposed second amended complaint fails to remedy the defects this order has identified, the Court may assume Plaintiff cannot amend to remedy these defects and the action may be dismissed on that basis.

**IT IS SO ORDERED**.

Dated: April 4, 2018

_____
Hon. Larry Alan Burns
United States District Judge